CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
Aug. 3, 2016

JULIA C. DUDLEY, CLERK
BY: A. Melvin
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIMOTHY L. BOONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:15-cv-107 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff Timothy L. Boone ("Boone") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Boone asserts that the Administrative Law Judge ("ALJ") erred by rejecting the opinion of his treating physician, failing to account for conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), failing to properly account for his moderate limitation in concentration, persistence or pace; and failing to properly weigh his credibility. I conclude that the ALJ failed to properly identify and resolve a conflict between the vocational expert's testimony and the DOT, and thus the decision is not supported by substantial evidence. Consequently, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), **GRANTING IN PART** Boone's Motion for Summary Judgment (Dkt. No. 14), and reversing and remanding this matter for further administrative consideration consistent with this opinion.

# STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Boone failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Boone filed for DIB in April 2011, claiming that his disability began on March 6, 2008,[2] due to heart problems, chronic kidney stones, shortness of breath, fatigue, blood clots, neck and back pain, hearing loss, decreased vision, hands and feet going to sleep while sitting, anxiety, and inability to handle stress and memory loss. R. 17, 182–85, 339. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 102–05, 116–18. On July 2, 2014, ALJ Benjamin McMillion held a hearing to consider Boone's disability claim. R. 34–65. Boone was represented by an attorney at the hearing, which included testimony from vocational expert Gerald Wills. Id.

On September 9, 2014, the ALJ entered his decision analyzing Boone's claim under the

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2),.

[2] Boone's date last insured is December 31, 2016. R. 19. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

2

Case 7:15-cv-00107-EKD-RSB   Document 21   Filed 08/03/16   Page 2 of 9   Pageid#: 785

familiar five-step process[3] and denying Boone's claim for benefits. R. 17–26. The ALJ found that Boone suffered from the severe impairments of heart disease, status post two heart attacks with stenting and angioplasty; fatigue; phlebitis; blood clots in legs and lungs; kidney stones, status post stone removal in 2011; hyperopia; and anxiety. R. 19. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 20–21. The ALJ further found that Boone retained the RFC to perform light work; specifically that he can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; occasionally climb ramps and stairs; occasionally crawl; never climb ladders, ropes, scaffolds; and frequently balance, stoop, kneel and crouch.[4] The ALJ found that Boone should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibrations, fumes, odors, dusts, gases, poor ventilation and hazards, and is further limited to 1–2 step instructions. R. 21. The ALJ determined that Boone could not return to his past work of grading and excavating supervisor, project or site manager, route salesman, or delivery and over the road truck driver (R. 25), but that Boone could work at jobs that exist in significant numbers in the national economy, such as gate guard, convenience store clerk, and cafeteria cashier. R. 26. Thus, the ALJ concluded that Dowdy was not disabled. R. 26. On January 26, 2015, the Appeals Council

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

denied Boone's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

Boone alleges that it was error for the ALJ to rely upon the vocational expert's testimony that he could perform work at the light level despite his restriction to standing and walking four hours in an eight hour workday because the vocational expert could not testify how many of the light jobs he identified would require more than four hours of standing. Pl. Br. Summ. J. p. 25. During the administrative hearing, the ALJ asked the vocational expert to consider a hypothetical individual with the limitations set forth in Boone's RFC, including a limitation of standing and walking four hours in an eight hour workday. R. 59. The vocational expert testified that such an individual could not perform Boone's past work, but that he could perform jobs in the national economy at the light[5] exertional range such as gate guard, convenience store clerk, and cafeteria cashier. R. 60–61. Upon cross-examination, Boone's counsel asked the vocational expert to clarify whether the light jobs he identified required standing and walking more than four hours in an eight hour workday. R. 62. The relevant portion of the questioning by Boone's attorney (labeled as "Q") and the vocational expert's responses (labeled as "A") is set forth as follows:

> Q: So, Dr. Willis, back to the judge's original hypothetical, the three jobs that you cited—so, none of those require standing and walking more than four hours?
>
> A. Yeah, they—now, the DOT doesn't talk about that.
>
> Q. Okay.
>
> A. But my experience is in working with those kinds of jobs through the years, and doing job placement for persons with limitation that those jobs require much more limited amounts of walking, and I think it would fit into the range, but the lifting is normally in the light range.

---

[5] The DOT definition of light work includes work that requires walking or standing to a significant degree. Dictionary of Occupational Titles, Appx.C, (4th ed. 1991), 1991 WL 688702.

4

> Q. Wouldn't there have to be available at all of these jobs, a chair or a stool to sit on? What if there is no chair or stool available at these jobs?
>
> A. Then they couldn't do those jobs
>
> Q. Okay.
>
> A. I have no idea—there is nothing in the research that would suggest that how many of those jobs could be done under those limitations. This is just my experience. I named these jobs because these light jobs normally require less walking, and that's really all we have on that.
>
> Q. Is it possible, though, that these jobs could require more than four hours of standing?
>
> A. It's—there are some that do, but that—my experience is that there is normally an accommodation with that job. Normally, there is a certain amount of sitting that exceeds the normal two hours in a light job.

R. 62–63.

Thus, Boone's attorney identified a potential conflict between the light exertional jobs identified by the vocational expert and Boone's limitation of standing and walking for four hours or less. The ALJ did not follow up on this line of questioning, aside from asking the vocational expert at the conclusion of his testimony if his testimony was consistent with the DOT, to which the vocational expert responded, "[y]es, except with the exceptions that I indicated." R. 64. Boone argues that this did not satisfy the ALJ's duty to resolve the conflict between the vocational expert's testimony and the DOT, and thus the ALJ failed to provide substantial evidence that Boone could perform work existing in the national economy. I agree.

At step five of the sequential evaluation, the ALJ must determine whether, considering the claimant's age, education, and work experience, the claimant is capable of performing other jobs existing in substantial numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). In making findings at steps four and five, an ALJ may rely on the testimony of a vocational expert. SSR 00-4p, 2000 WL 1898704, at *2. The ALJ and the vocational expert are to rely on the DOT to define any jobs the claimant is able to perform in terms of the exertional, non-exertional, and

5

mental activities they require. Id. Furthermore, the ALJ has a duty to identify any apparent conflicts between the vocational expert's testimony and the DOT. Id. ("When there is an apparent unresolved conflict between [vocational expert] … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] … evidence to support a determination or decision about whether the claimant is disabled.").

In Pearson v. Colvin, the Fourth Circuit held that the ALJ's duty to identify and resolve conflicts with the DOT is independent from any duty the vocational expert may have to identify such conflicts, and that the ALJ's duty extends beyond simply asking the vocational expert whether his testimony is consistent with the DOT. 810 F.3d 204, 208–09 (4th Cir. 2015). Rather, the Fourth Circuit clarified that "the *ALJ* (not the vocational expert)" is required to "'[i]dentify *and* obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the *Dictionary*…." Id. at 208 (emphasis in original) (citing SSR 00-04p). The Fourth Circuit limited the ALJ's duty to identifying "apparent" conflicts, which it held to mean "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the *Dictionary*. For the Ruling [SSR 00-4p] explains that '[i]f the [vocational expert]'s … evidence *appears to conflict* with the [*Dictionary*], the adjudicator will obtain a reasonable explanation for the *apparent* conflict.'" Id. at 209 (emphasis in original).

In Pearson, the apparent conflict at issue involved the degree of reaching required for a job identified by the vocational expert. Id. at 210–11. According to the DOT, the job required frequent reaching, in no specific direction, while the claimant in Pearson was limited to occasional overhead reaching with one arm. Id. The Fourth Circuit found that the ALJ erred by failing to identify and resolve the apparent conflict between the vocational expert's testimony that the claimant could perform the job and the job requirements provided by the DOT. Id.

6

Here, the conflict is between Boone's restriction to standing and walking four hours a day and the DOT description of light work as work that "requires walking or standing to a significant degree." The vocational expert was unable to testify as to how many light exertional jobs would accommodate Boone's standing and walking restriction. R. 62–63. The Commissioner asserts that the vocational expert's testimony that in his experience "there is normally an accommodation," and "[n]ormally, there is a certain amount of sitting that exceeds the normal two hours in a light job" satisfies the ALJ's duty to resolve the conflict with the DOT. While an ALJ can rely upon a vocational expert's experience to explain an apparent conflict, see Corder v. Colvin, No. 1:14CV768, 2015 WL 4508418, at *3 (M.D.N.C. July 24, 2015), there must be some basis in the vocational expert's testimony to find that significant numbers of jobs exist in the economy that Boone can perform. Here, although the vocational expert testified that Boone can perform the jobs identified because in his experience "there is normally an accommodation with that job" the vocational expert also testified that he had "no idea" how many of those jobs could be done under Boone's limitations. R. 63. Specifically, the vocational expert testified, "there is nothing in the research that would suggest that how many of those jobs could be done under those limitations." R. 63.

An ALJ can only find a claimant not disabled at step five if the Commissioner proves that the claimant can perform other work that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c). As the court stated in Pearson, "it is not enough that some positions exist…[t]he vocational expert must testify as to how many of these positions do not require [standing and walking more than four hours in an eight hour workday]." 810 F.3d at 211. Here, the vocational expert testified that there were 127,000 gate guard jobs in the national economy and 2,500 in Virginia; 3,000,000 convenience store clerk jobs in the national economy

7

and 80,000 in Virginia; and 3,000,000 cafeteria cashier jobs in the national economy and 89,000 in Virginia.  The vocational expert later testified that it is possible that some of the jobs identified could require more than four hours of standing, and that based on his experience "normally" there is a certain amount of sitting that exceeds two hours in a light job, he could not say how many jobs would provide accommodation for two hours of sitting and how many would require more than four hours.  This simply does not satisfy the ALJ's duty to determine that work exists in significant numbers in the national economy that Boone can perform.   As the court stated in Pearson, reviewing courts are not to "guess what these occupations require in reality" because it is the responsibility of the ALJ to elicit an explanation from the vocational expert and resolve such conflicts. Pearson, 810 F.3d at 211.

   The vocational expert's confirmation that his testimony was consistent with the DOT did not satisfy the ALJ's duty to independently resolve the conflict between the light jobs identified by the vocational expert and Boone's standing and walking restriction.  "The ALJ must resolve the conflict before relying on the [vocational expert's] testimony and must explain the resolution of the conflict in his decision." Henderson v. Colvin, No. 15-1437, 2016 WL 1320779, at *3 (4th Cir. Apr. 5, 2016) (citing SSR 00-4p).  "An ALJ has not fully developed the record [to satisfy the substantial evidence standard] if it contains an unresolved conflict between the expert's testimony and the Dictionary." Pearson, 810 F.3d at 210.  Thus, this matter should be remanded with instructions to identify and resolve any apparent conflicts between the DOT and the vocational expert's testimony as required by Pearson, as well as the additional arguments raised

8

Case 7:15-cv-00107-EKD-RSB   Document 21   Filed 08/03/16   Page 8 of 9   Pageid#: 791

by Boone's counsel in this appeal, including the impact of the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).[6]

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** the final decision of the Commissioner, **GRANTING IN PART** summary judgment to the plaintiff, and **REVERSING** and **REMANDING** this matter to the Commissioner for further administrative consideration.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 2, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[6] Boone raises other allegations of error in his appeal relating to the weight the ALJ gave to the opinion of his treating physician, the accommodations provided for his limitations with concentration, persistence and pace, and the ALJ's credibility determination. Pl. Br. Summ. J. p. 21–32.